Council, Smith & Nephew, and John Hayhurst v. Arthrex, 2014-17-29 If you've caught your breath, Mr. Sabre, you can address... I can do that. 30 seconds. Alright. Thank you. Welcome back. Thank you. May it please the court, again. This appeal involves the divided infringement issue. As the court knows, each claim of the 557 method patent includes the step of attaching the suture to the member. The evidence shows that it is Arthrex that does that step because the suture tax, which is what this is involved with, so this may not be very precise, but it seems to me that the one thing that is clear is that you're not entitled to judgment as a matter of law because we don't know how many surgeons take off the as-delivered suture and put in their own. And it's not necessarily limited to the number of your little placater devices or whatever it says. That could be more. So the question is whether you're entitled to a new trial. And it's not clear to me that you asked for one or, more importantly, that the district court, in preparing in the spring of 2008 for the second trial, wasn't perfectly entitled to say an issue that's a factual issue, not a legal issue, that you did not raise starting in your 2004 responses to the infringement contention, that they didn't prepare for a trial, didn't present evidence at a trial, that you don't get to do that over. So what's wrong with that? Well, there's a lot of parts to your question, and I'll try to address all of them. First of all, what I think you're referring to is this placation issue. Well, I don't want to put it in a box. I actually meant to say, in this instance, pretty close to exactly what I did say, which is to say you cannot know how many surgeries the surgeon, in fact, performed the set. So you can't say never. You can't say 943 or whatever the number of placater devices is. So you don't get JMO out. There would have to be a factual trial on how often this took place, and that's the issue that by not raising it for at least four years, you took out of the trial, out of the case. Well, I guess in the first instance on this issue, there was a record, there was discovery, and there was no evidence of a single surgery. Why would they put on the evidence if you didn't raise the issue? Well, they're the ones who had the burden of proving their case. Now, if they believed – I think the question, if I understand it, is the same one that I have, and that is you didn't raise the divided infringement issue at the first trial that resulted in the Hunter, right? That's correct. And in your opening brief, you said, oh, well, the law was clear on demand, foreclosed that argument. And in the reply brief, you seemed to take a different tack and say, well, the law was unclear. But if the law was unclear, then you should have raised it at the first trial. The question is that when there was a new trial ordered, could you at the new trial bring in this new theory, which I think is what Judge Toronto is asking about. And neither side cites any authority that's meaningful on that point. I asked my clerk to try to find authority. I couldn't find any either. And it strikes me as a difficult question of whether your failure to raise an issue at a first trial forecloses you when there's a new trial ordered and you try to bring it up at the second trial. That's the essence of the issue here. I completely agree. I think that that really is the fundamental question that this appeal goes off on. And as best I can answer that is two ways, Your Honor. First of all, I think the record is if we said in our case that the law was clear in our opening brief, I apologize for that. I thought what we said was that the last case that had been decided had said there was none, but that really what this court has said is that the law is unclear. And, in fact, I think that's very clear. If there's one thing that's clear is that this court decided the Farberstead case in the interim and said, hey, we have not decided this question. But the lack of clarity of the law is not an argument as to why you were excused from raising the issue. Correct. And now we get to that question. And so with respect to that question, we have a principle that is very, very well established in the law, that we are now before trial. There is going to have to be a trial. And judges, whether it's this court listening to the Supreme Court, the district court. And you say now, do you mean 2007 or 2008? 2008. There's going to be a second trial. Correct. We're before trial now. And I think that's very critical. Which the judge is saying, we are not going to open up issues at the second trial that could have been presented at the first trial. What's wrong with that? I think that's what we're talking about. Because there was intervening law. And this is really the question. I think, Judge, we tried to find the case that was right on point for it as well. And the closest case we came was the Curtis case, which is the Supreme Court. That was a situation where a defendant raised state law defenses to a liable case and to a liable claim. It was unclear whether constitutional defenses existed or not. They did not raise them. Then the Supreme Court decides to solve the case. It establishes these defenses. At that point, once now the law was clear, and I think that really is very similar to what happened here in BMC, the law is now clear that we have a defense. And at that point in Curtis, the defendant went back post-trial, I would say. It filed a motion for a new trial post-trial. And the district court and the circuit court said, no, don't have to do it. The Supreme Court reversed. They said, yeah, it's possible that you can waive. We get that. But would you have the law unclear like this? There's a principle. You've got to follow the law. I thought the Supreme Court ultimately affirmed. The Supreme Court reversed on this point. On this point, the Supreme Court ultimately affirmed. Well, maybe when you got to the merits of the case. So there was a plurality that said, we think you can raise it. And one of the things it said was, because it's perfectly clear, this trial judge would have rejected it. So there was really no harm here. It doesn't quite stand for the general proposition that what you could have raised, because it wasn't foreclosed by governing precedent, you'd never have to raise. Well, I think the discussion in Curtis, I mean, this is the Supreme Court speaking. They really tried to answer. In fact, when they get to that part of the opinion, they say, well, there's an initial question we have to answer. Is it too late? Did you wait too long? This is just a plurality. I don't remember. I know it was four justices. I don't remember. I know I tried to put that together. I just can't remember. But in any event, one of the things that opinion does say that goes into why it wasn't too late there was essentially futility. I don't think that that's really right. In the part of the opinion where they're talking about this waiver concept, this waiver concept, they looked at it, and they really start with a basic fundamental proposition. I think the Supreme Court has said this before, is trial courts, all courts, you have to follow the best understanding of the law. Now, I don't think Curtis helps you, and let me tell you why. Curtis is what would have happened if after the first trial there had been a jury verdict, and you'd appeal, and you were arguing we ought to be able to argue the divided infringement issue now that we've got this new authority. And I'm not sympathetic to the idea that you could have done that in the first appeal from an actual jury verdict. But it does seem to me that this is somewhat different from that situation because we are having an entire new trial, and the question is are you bound by the strategic decisions that you made at the first trial? And there's not a lot of burden in the second trial of allowing the divided infringement issue to be raised. Why should your tactical decision in the first trial preclude you from doing that in the second trial? To me, that's the heart of the issue as to which I was unable to find any authority. Well, again, at the first trial I think it's clear that certainly – I wasn't at the first trial, to be honest, so I really can't speak for Arthrex's lawyers, and the record is silent as to what their intent was. But certainly what I can say from looking at the record is that there was no answer to the question, and the latest case that was decided had said that you don't have this kind of a defense. Now, so they didn't raise it, and now the law becomes clear. I mean this court has – the court said, we are going to decide this issue, and they did decide this issue. And then now there's going to be a new trial, right? And the question is really can a court just say, well, you know, we just don't have to get into that because the law wasn't clear then. But I'm going to just ignore it. But I think this issue must come up all the time where there are new trials, and people are trying to introduce new issues into the second trial that they didn't bring into the first trial. And I'm not aware of any authority that addresses the question of whether that's permissible or impermissible. It seems to me to be a somewhat difficult question. Well, you know, the issue that does come up, and that's why this is a very different kind of case, is, you know, when you don't raise it, and now you're on appeal and you're trying to raise something. That's not our facts. Our facts really is – and this is kind of a somewhat unusual case where you actually are going to be having a second trial. And so this is not really the case. Indeed, if we had raised it and then we came up on appeal and we wanted to make this argument, of course we would be precluded. That's the remedy when someone in Arthrex's position doesn't raise the issue. You can't raise it on your appeal later. But now we have this intervening law, and we think that makes all the difference in the world. Can I ask you, was there additional discovery between the first and the second trial? There was. In fact, Smith and Nephew asked to completely redo the expert reports. Because there was a different claim construction. No, not between the – I'm sorry, not the first – Yeah, there was. Smith and Nephew was able to convince the court that they should reopen the discovery to bring these issues, and certainly they could have. In fact, Smith and Nephew, one of the things that they said, if we really get into the record and see exactly what the district court did, the district court of course doesn't – Judge Mossman of course we know doesn't write very much. But what happened is he walks in, even though no one had asked him for this relief. I think I understand that, but I want to – before your time is up. So in this case you file your complaint in what, January of 2004? It was 2004. 2004. And in I think October you respond to their contention interrogatory and make no mention of this indirect infringement. What I guess I'm wondering about, I'll ask it very informally, why could they at that point not give up on discovery on an issue, namely what do surgeons actually do in the tens of thousands of surgeries with respect to the as-delivered sutures on these anchors? Well, I think that's actually a little bit backwards to what's going on. If Smith and Nephew is taking the position that only the surgeons are the infringers, you would think that they would have the incentive to develop that very discovery to show that the – Unless you effectively told them it doesn't matter to us. Well, again, do we have to raise that issue or do they have the burden of proving their case? I mean I'm not sure which way that would go. But in any event this was a time when the law was unclear and I think we all know that. It wasn't raised, so if it was raised we wouldn't be having this argument here today. I understand that. But we're here now before there are second trials. No one asked Judge Mossman to preclude us. He clearly went further than the motions. That's right. And to me that is – he just ignored the fact that there's this new case, important case decided by this court. That is error. We would be having a different discussion. But when he said that, did you go back to him and say, look, the motion was to prohibit us from saying they never do this. Correct. That doesn't mean we can't prove that they do this only some of the time and not very often. Well, what happened, of course, is he just precluded – he said I'm not going to take any arguments on it. What did happen – But maybe that's because he understood correctly that you were presenting this more or less the way you're presenting it in your briefs here as an all or nothing issue. There's nothing – no factual issue to try here. We'll give up a thousand placaters. Aside from that, they never do it. Well, in fact, in our reply brief on that motion, we said, oh, by the way, if you want to put the evidence on, fine, we'll deal with it as an evidentiary point. So I think that Arthrex, even in the record on their reply brief on the limiting motion, said, sure, we can have a fact dispute about this or we can have a fact trial about that. But Judge Boston said the issue is just not there. And then, of course, during the trial, we asked for a J-more on this basis. So, I mean, certainly – and he said, well, I told them they didn't have to put any evidence on this, which, of course, was correct. That's exactly what he said. But we don't have a judge here who exercised any discretion at all. This is a judge who just said I'm not going to go down this road, and he never even considered the change in law and the intervening law. That, Your Honor, I believe is error and is a reason why this thing must be reversed. And on your question that you started with, Your Honor, the alternative, as we asked for, would be a trial. Thank you. Thank you, Mr. Saber. As before, you've consumed all your time, but we'll give you two minutes back for rebuttal. Thank you. Mr. Kenyon. May it please the Court. Since we were talking about the waiver issue here, I'll start with that. And that is a little factually different than what Mr. Saber said. What happened was in the first trial, before the first trial, the parties submitted proposed jury instructions on the issue of direct infringement in an inducement case. Our instruction was from the AIPLA model instructions at the time. It called for direct infringement by a single entity. Their instruction that they proposed before the first trial, this was 2007, was from the Federal Circuit Bar Association model instructions. That proposed that direct infringement in an inducement case be by a single entity. There was no confusion at that time as to what that was. They chose not to attack our testimony and our evidence at trial based on those rulings. That was, in fact, the instruction that the jury was given in the first trial. What happened after that was that this Court decided the BMC payment tech case, where it said that the prior precedent of the Court has been that direct infringement is proven by a single entity. And they cited a number of previous decisions of the Court establishing that. That's entirely consistent with how it went to the jury in the first trial. The judge for the second trial says, I'm narrowing the issues, as he's entitled to do. What case says he's entitled in having a second trial to rule out new issues? What we said in the brief is Wright Miller has a provision on that, dealing with the judge's inherent ability to control the scope of his trial. It doesn't deal specifically with that issue, but it deals in general with what he can do and what he can exclude. So as Judge Dyke, as you said a few minutes ago, you couldn't find a case specifically on that. I don't know of one either, but that was the authority he was relying on. And he said, what I want to do is I want to narrow it. You didn't contest these issues in the first trial. We're not going to have them put on their evidence again. And when he did that, he asked for letters, and he asked how to hear him. In connection with the stay motion, where we said this seemed to raise a substantial issue, there in those papers seemed to be some references, maybe I'm confused, to articulation by the District Court as to why he didn't allow this to happen at the second trial. Is there something else on that subject that's not in the appendix that we have? No, it is in the appendix, but it's not quite explained correctly here by Mr. Saber. What happened was that the judge said, I want to narrow the issues. You two take a crack at it, and then I'm going to do something with it. At that point, Arthrex never raised that it had a new defense requiring new testimony. And so then we went into the next, this was December 2007. We're going to retry in June 2007. In April 2007, I'm sorry, we're going to retry in June 2008. In April 2008, they submitted their pretrial brief. They never mentioned this defense, based on supposedly the BMC case decided from December before. But I don't understand that he rejected the defense on the ground that they didn't raise it in the pretrial statement. Well, the way it came up was this. In our pretrial brief, and it's set out in our brief here, In our pretrial brief, we identified this. They're trying to raise a new defense based on direct infringement, or divided infringement, if you will. So it was mentioned in the pretrial brief. Yes, in our brief. We said they're trying to raise it. They shouldn't be allowed to raise it because it requires new claim construction and requires new evidence. And we set forth in our brief what new evidence we would have to present to respond to that. They didn't raise it then. What they raised instead was witness statements. This judge required that expert witnesses are limited to what's in their report. But you also had to submit statements for fact witnesses. And they were limited to what was in those fact statements. And these were all pretrial submissions. They and their fact statements for the witnesses changed what they were going to say from the previous trial to put in evidence relating to this divided infringement defense. So they were proposing to put in expert testimony if there was no, no? I think it was fact testimony. Fact testimony. Not expert testimony. But it was defiled infringement. Yes. Yeah. And that's what we. . . And that surgeons never took out the. . . Yeah, sure. . . comes preloaded with sutures. And that was their defense. And then in response to our motions eliminate to exclude that new testimony relating to this new defense, they then raised a new defense citing the BMC case. So the judge knew exactly what he was ruling on. In ruling that, you've raised a new defense. It's not one you've raised before. It's one you could have raised before and didn't. Where in the record do we find that articulation by the district court? The judge, it's in deciding his motions eliminate 36 and 37. And he doesn't have a big explanation on it, but he says, I recognize that this is a new defense and you can't raise it. There's no big explanation on that, but that's what he says. This is just these bits at 108.06 and 108.15, right? I think that's correct, yes. So that was the May 19th pre-trial conference where we decided all the pre-trial motions including those. And that's what he said. But he definitely recognized it as a new defense that they were trying to raise. And it's one they could have raised before. As a result, we weren't required to put on all the testimony that we put on in the first trial to prove direct infringement. But we did put on some because there was a demonstration for the jury. But as a practical matter, they were not allowed to raise that as a defense. In arguing against that, did you say that you would need more discovery if they were going to raise that? We would by now because discovery closed in 2006. No, no, but at that time when this new issue was raised, what was your argument against it? Our argument against it was two things. We would need to change the claim construction we had been operating on for attaching. We'd have to go to a completely method step as opposed to the structural way that both parties had been interpreting it. Then we would have to put on testimony relating to not only that the surgeons did change these sutures out and that there was a direction and control issue here that we had evidence on at that point. But that's the evidence we summarized in our pre-trial brief in that case. Okay, but you weren't arguing that you hadn't had adequate discovery on this? No, the argument was not at that time we didn't have adequate discovery. The argument was at that time we had some discovery as to how they were doing it, but as I think you mentioned, judging the questioning of Mr. Saber, it says that didn't become a big issue in discovery because their defense, their sole defense on the attaching issue in discovery was that for the biome suture attack anchor, the suture was never actually attached to the anchor. It was never physically attached. There's an intervening piece that they called. Well, let's put it this way. How would you have been prejudiced at the second trial if they had been allowed to raise the defied infringement issue? Well, one way we would have been prejudiced is it's quite clear that not 100% of the biome suture attack anchors had sutures changed by the surgeon. It's not 100%, but it's not zero either. It's someplace in the middle of that, and we had no discovery as to what that amount might be. That would certainly prejudice our damages presentation in the case on that, not necessarily the infringement issue. Also, in question of that, we never actually took a lot of discovery on the issue of what's the direction and control of business. We had some evidence on it, and we never took a lot of discovery on the two instruments that they had to do this and just how many they had sold and to whom they had sold. If the instrument sold, for example, to a small clinic, that's one thing. If it sold to Mass General Hospital, that's something else. The use of it might be considerably great. We could put on evidence relating to it, but it would certainly be incomplete because it was never raised as a defense at any time during discovery, and so we never took extensive discovery on that. Now, the other issues in the case we had, for example, the resilience issue, which was a key issue. We had a lot of discovery on that. So where it was was he excluded that, and then the trial went forward. There's a jury verdict in our favor. Based on the same jury instructions on directed infringement, that wasn't in the first case. What went into the first case was entirely consistent with what was in the BMC case. It was the same instruction in the second trial. It was the same instruction in the third trial. It's entirely consistent with a single actor performing direct infringement. That's exactly what the Supreme Court says, and maybe we don't agree with it, but the Supreme Court says in the Limelight case that just came down. So, in a sense, they're asking for you to vacate that judgment of infringement based on changed law when, in fact, all the infringement verdicts in the case, all the judgments that were entered as a result of it, are, in fact, entirely consistent with that law. To go back and give you a little more background here just as I finish up, as to the waiver question, there is another issue in the waiver question here, and that is this, is that after this first appeal, this court remanded for a new trial, and at that trial, that was the 2008 trial, I'm sorry, that was the 2011 trial, the same jury instruction was given, requiring a single entity, but before the trial, before the third trial, they moved for summary judgment, and they moved for summary judgment on the basis of this divided infringement defense. The district court didn't rule on the merits of defense, it ruled that, A, mandate rule precluded it, and two, you're asking me to reconsider my waiver ruling, and you didn't do it properly under the Ninth Circuit standards. After the third trial, they included that as an argument in the appeal, and they argued that, in fact, his decision on the mandate was wrong, and the waiver issue, they never waived to begin with, presenting the same arguments on waiver in making this appeal. This court, in deciding that second appeal, said that all these other arguments that are being made are without merit. That same argument now is tacked on to their motion to reopen the infringement judgment because of the Limelight case, and now raised here, and the court denied that relief. The net result here with this is simply that the judge below did not abuse his discretion in failing to reopen that infringement issue. There was no new law that was different to what the jury had been given and what the infringement issues were decided on, and that waiver issue was what they had presented to this court before, and as a practical matter, had been rejected. So that concludes my remarks here. Thank you. Mr. Skanyan, Mr. Spavor, have a couple of minutes to move up if you wish. So do tell us why they wouldn't have been prejudiced in the second trial by not having had discovery on the divided infringement issue and at least its potential relevance to damage. I think there's two answers to that, Your Honor. First of all, since even ab initio, since Smith and Nephew took the position that the surgeons were the direct infringer, if in fact they were going to meet this attaching the suture to the member, they had to show the surgeons did it. So they had every incentive right from the beginning to show the number of anchors where the suture was taken off and reattached by the surgeon. They had every incentive. I'm sorry, unless for some reason everybody was proceeding on the assumption that notwithstanding the attaching language of this claim element, it was more structural than stepping a method. I suppose that would be correct, except there's absolutely no evidence of that. That was something that Smith and Nephew raised before the second trial. They never said that before the first trial at all. In fact, as we showed in our brief, they completely changed their language. One might infer it from the otherwise eye-opening or eye-popping fact that you didn't make this argument from the beginning. Well, certainly if someone was saying something that so obviously is a method step, somehow isn't, I think we would have seen it before we saw it in 2008. We never saw that in 2007. But in any event, getting back to the second thing, of course, if for some reason they thought that they needed more discovery on that, as I mentioned to Judge Toronto, the discovery was opened anyway. It could have been easy. There's $100 million that's been awarded in this case. If they're all pre-attached, which by the way was a very important part of their damage theory, is that these things all come pre-attached. If pre-attached, then over $90 million of that $100 million would disappear. So this is really an important question that we're going to. I guess this is where I started. How do we know that? Maybe it's only $5 that would appear because maybe the evidence would show that practically all the surgeons really do take out the as-delivered suture and put in their other one. Well, of course, absolutely no one has ever contended anything like that. But we just don't have any. That was the issue that was not tried. Well, if that would be the issue that would be tried, I think everyone has always known that this method where you – coming pre-attached is the way this thing comes, and that's the way it's used. There's one procedure where it's suggested if you want to take one off and put another one on, you could do that. But the notion that this one procedure where it's possible to do that is going to encompass the entirety or all close to the entirety is really – there's no evidence to simply to support that. It may be less than zero. I understand that. But I think we're talking about a relatively low thing. But that's really why this is important. I mean, potentially, then, to take Your Honor's point, potentially we're talking about over $90 million that is potentially going to go to someone when they just simply didn't meet the claim. And we just don't think that that's fair based on this record. Thank you, Your Honor.